IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21-cv-244-ECM |
| | ) | [WO] |
| ROBERT L. CRITES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER

On March 16, 2026, the Court granted the Government's motion for summary
judgment and awarded $31,039,134.82 against Robert L. Crites ("Crites") for violations of
the False Claims Act, 31 U.S.C. § 3729 ("FCA"). (*See* docs. 159 & 160). On April 13,
2026, Crites timely moved to set aside the judgment against him under Federal Rules of
Civil Procedure 59(e) and 60(b). (Doc. 161). That motion is due to be denied.

## I.  BACKGROUND

The meandering history of this case has already been recounted in the Court's
Memorandum Opinion and Order granting summary judgment against Crites:

> The Government initiated this suit on March 23, 2021, by filing
> its original complaint against Defendants Bart Edmiston, Carl
> Edmiston, J.R. Vaughn ("Vaughn"), and Crites. (Doc. 1). On
> February 4, 2022, the Government filed an amended complaint
> (the operative complaint) against these same Defendants plus
> Louis Orr Priester III ("Priester") and Joy Priester Cherry.
> (Doc. 52). The amended complaint assert[ed] four counts:
> presenting false claims (Count I); making false records or
> statements material to a false claim (Count II); conspiracy to
> violate the FCA (Count III); and unjust enrichment (Count IV).

> After a series of settlements, (*see* docs. 84, 114, 123, 156), Crites [wa]s the sole remaining Defendant.
>
> Crites, who represent[ed] himself pro se, has a spotty track record of participation in this case. Over fifteen months after the original complaint was filed, Crites filed an answer to the amended complaint in which he denied the allegations against him. (Doc. 91). Shortly thereafter, Crites was appointed counsel for the sole purpose of representing him at mediation with the Magistrate Judge. (*See* doc. 94). When mediation failed, Crites resumed representing himself. (*See* doc. 112). [After Crites participated in the parties' planning meeting, (*see* doc. 118),] [t]he Court entered a Uniform Scheduling Order ("USO") on June 2, 2023. (Doc. 119). The Court amended its USO four times thereafter—and extended the dispositive motions deadline once beyond that—to afford the parties ample opportunity to explore settlement. (*See* docs. 127, 132, 137, 141, 143).
>
> Alas, Crites and the Government did not settle, and on March 26, 2025, the Government filed a motion for partial summary judgment on Counts I and III[—which it stated would provide "all the relief" it seeks. (*See* Doc. 146 at 1 n.1)]. The Court ordered Crites to respond to the motion on or before April 17, 2025. (Doc. 149). On April 18, 2025, the Government, having learned that Crites retained counsel, moved to extend the briefing schedule by thirty days "to allow the parties to discuss settlement and allow [counsel] to appear in the case and prepare a defense." (Doc. 150). The Court again obliged and extended Crites' response deadline to May 19, 2025. (Doc. 151). However, Crites did not settle or respond. On May 23, 2025, the Government filed its reply. (Doc. 152).

(Doc. 159 at 3–5 (footnotes omitted)). On July 7, 2025, the Government filed a notice of new authority related to FCA penalties. (Doc. 154).

On March 16, 2026—nearly a year after the Government moved for summary judgment against Crites—the Court issued an order finding Crites liable under the FCA and awarding a judgment of $31,039,134.82 against him. (Doc. 159). The Court entered

Final Judgment the same day. (Doc. 160).  Then on April 13, 2026—almost one year after his original time to respond to the summary judgment motion had lapsed—Crites finally responded, filing the instant motion to alter or amend the judgment. (Doc. 161).

## II.  LEGAL STANDARD

"A post-judgment motion may be treated as made pursuant to *either* [Rule] 59 *or* 60—regardless of how the motion is styled by the movant—depending on the type of relief sought." *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) (per curiam) (emphasis added) (citation omitted).  "Any post-judgment motion to alter or amend the judgment served within [twenty-eight] days after the entry of the judgment, other than a motion to correct purely clerical errors, is within the scope of Rule 59(e) regardless of its label." *Rance v. D.R. Horton, Inc.*, 316 F. App'x 860, 863 (11th Cir. 2008) (citations omitted); *cf. Griffin v. Philips*, 2025 WL 1502188, at *1 (11th Cir. 2025) ("If a motion for reconsideration is filed within [twenty-eight] days of the entry of judgment and calls into question the validity of the judgment, it should be characterized as a Rule 59(e) motion regardless of how it is styled." (citation omitted)).[1]  A motion that seeks to set aside a "grant of summary judgment . . . is properly characterized as a Rule 59(e) motion . . . rather than a Rule 60 motion for relief from the judgment." *See Mays*, 122 F.3d at 46.

Rule 59(e) permits parties to file "[a] motion to alter or amend a judgment . . . no later than [twenty-eight] days after the entry of the judgment."  "The decision to alter or amend judgment is committed to the sound discretion of the district judge." *Am. Home*

---

[1] Here, and elsewhere in this Opinion, the Court cites nonbinding authority.  While the Court acknowledges these cases are nonprecedential, the Court finds them persuasive.

*Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985) (citations omitted).  To prevail under Rule 59(e), the movant must proffer newly discovered evidence or identify manifest errors of law or fact; the law of this circuit is clear that those are the only proper grounds for relief. *Thelen v. Somatics, LLC*, 156 F.4th 1115, 1124 (11th Cir. 2025) ("The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." (alteration in original) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)); *accord In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999) (same).

Similarly, Rule 60(b) permits a court, "[o]n motion and just terms," to "relieve a party or its legal representative from a final judgment, order, or proceeding," and enumerates grounds upon which such relief may be granted, including "mistake, inadvertence, surprise, or excusable neglect" and "any other reason that justifies relief." FED. R. CIV. P. 60(b)(1), (6).  Whether to relieve a party from a final judgment under Rule 60(b) is "a matter for the district court's sound discretion." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1317 (11th Cir. 2000) (quotation omitted); *Lambrix v. Sec'y, Fla. Dep't of Corr.*, 851 F.3d 1158, 1170 (11th Cir. 2017) (same).

"Litigants cannot use a Rule 59(e) motion to raise argument or present evidence that could have been raised prior to the entry of judgment.  The same goes for Rule 60(b)." *United States v. F.E.B. Corp.*, 52 F.4th 916, 933 (11th Cir. 2022) (quotation and citation omitted); *accord Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005) ("[A party] cannot use a Rule 59(e) motion to relitigate old matters . . . that could have been raised prior to the entry of judgment." (citations omitted)); *Glenn Estess*, 763

F.2d at 1239 ("There is a significant difference between pointing out errors in a court's decision on grounds that have already been urged before the court and raising altogether new arguments on a motion to amend; if accepted, the latter essentially affords a litigant 'two bites at the apple.'").

At bottom, the reconsideration of a judgment under either rule is an extraordinary remedy to be exercised sparingly. *See* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2810.1 & n.13 (collecting cases); *see also Arthur,* 739 at 628; *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F. Supp. 1072, 1072 (M.D. Fla. 1993) ("The Court's reconsideration of a prior order is an extraordinary remedy.  Exercise of this power must of necessity be used sparingly.").

### III.  ANALYSIS

Because Crites' motion seeks to set aside the grant of summary judgment,  the Court evaluates it under Rule 59(e) rather than under the less-forgiving Rule 60(b). *See Rance,* 316 F. App'x at 863; *Mays,* 122 F.3d at 46.  Nonetheless, after explaining why his motion fails under Rule 59(e), in deference to Crites' arguments, the Court explains why relief is not warranted under Rule 60(b), either.

### A.    Rule 59(e)

Crites devotes a substantial portion of his motion arguing about the facts found at summary judgment, raising legal arguments and defenses he could have mounted prior to the entry of judgment. (*See* doc. 161 at 3–5, 8–15, 18–28, 30–31).  He does not present any new evidence regarding the merits of the case beyond a self-written declaration containing facts that were known and available to him—facts that he could have, but did not, present

at summary judgment. (*See* doc. 161-2).  In other words, Crites is attempting to use Rule 59(e) for something it is patently unsuited for: "relitigat[ing] old matters . . . that could have been raised prior to the entry of judgment." *Michael Linet*, 408 F.3d at 763.[2]

Crites also argues that allowing the judgment to stand against him is manifestly unjust because the amount was much greater than the amounts all of the other defendants settled for and because the judgment was greater than the Government's total loss. (Doc. 161 at 1–2, 6–7).  Aside from the fact that manifest injustice is not a ground for granting Rule 59(e) relief,[3] these arguments are also unpersuasive because the FCA is, by design, a powerful tool for the Government to recover from and deter fraud, reflecting Congress' desire that the Government be "made completely whole" when liability is found. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537, 551–52 (1943); *cf. United States ex rel.*

---

[2] To the extent that Crites contends that there are "manifest errors of law and fact" that can be disentangled from his legal and factual contentions which he could have presented at summary judgment, the Court finds his arguments unavailing.  In brief:  (1) the Court drew all reasonable inferences in Crites' favor—leading to, among other things, a three-million-dollar reduction in his liability from that sought by the Government, (*see* doc. 154); (2) each of the claims the Court attributed to Crites was corroborated by record evidence; (3) the Court found that the evidence satisfied even the heightened "but-for causation" standard (while also noting that another court in this circuit did not apply that standard); (4) the Court found the Government satisfied its burden with respect to every element; (5) the Court addressed the satisfaction of the scienter requirement by the FCA—and Crites now appears to admit that he possessed the requisite scienter, (*see* doc. 161-2 at 2–3); (6) the Court addressed the materiality of alleged violations to the Government's decision to pay; (7) Crites did not, as he now suggests, have to personally submit the claims he generated as part of the conspiracy, (*see* doc. 159 at 12–13 (discussing applicable conspiracy law)); (8) and the Court addressed the nature of kickback-tainted claims as false claims.  In short, all of the arguments Crites raises now (for the first time, out of time) were analyzed in the Court's order, and Crites has not identified any specific manifest error in that order that would justify the relief he now seeks.

[3] Though other circuits recognize "manifest injustice" as a ground for relief under Rule 59(e), *see Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004), the Eleventh Circuit does not, *see Thelen*, 156 F.4th at 1124; *Arthur*, 500 F.3d at 1343; *In re Kellogg*, 197 F.3d at 1119; *see also United States v. Mathias*, 2025 WL 1823237, at *4 (11th Cir. 2025).  But even if manifest injustice did furnish a basis for relief under Rule 59(e), it does not appear Crites would be entitled to relief on that basis. *See Ciralsky*, 355 F.3d at 673 (discerning no error where the district court found no manifest injustice "exist[ed] where . . . a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered" (quotation omitted)).

*Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 423 (2023) ("The FCA dates to the Civil War, when a Congressional committee uncovered stupendous abuses in the sale of provisions and munitions to the War Department. . . . To put a stop to the plunder—and more generally, to protect the funds and property of the Government—Congress enacted the FCA." (quotations omitted)).  That desire was evidently ardent, as Congress saw fit to attach treble damages and statutory penalties to FCA liability. *See Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 786 (2000) ("The very idea of treble damages reveals an intent to punish past, and to deter future, conduct . . . .").  To that end, FCA monetary awards are significant, time-tested tools that justly provide the Government more than the total amount lost.  Accordingly, the fact that the Government may compromise an FCA claim against one defendant for a pittance does not make a full award at summary judgment against another defendant manifestly unjust.

Crites further contends that the judgment against him is manifestly unjust because the judgment was unforeseeable to a non-lawyer. (*See* doc. 161 at 5–6).  Not so.  Crites could not reasonably believe that a pending motion for summary judgment, filed solely against him, was to be indefinitely held in abeyance when:  (1) the Court ordered Crites to respond to the motion for summary judgment, (doc. 149); (2) the Court extended Crites' response deadline (which had already passed) and *again* ordered him to respond, (doc. 151); (3) the Government filed a reply, specifically noting Crites' failure to respond and requesting the Court consider the facts in its motion undisputed because of that failure, (doc. 152); (4) the Court continued all future deadlines "pending resolution of the motion

for summary judgment," (doc. 153); and (5) the Government filed a notice of new authority related to FCA penalties for the motion on July 7, 2025, (doc. 154).

Additionally, Crites repeatedly rails against the "distortions" to the factual record caused by "the unopposed record" that the Court relied on when it granted summary judgment against him. (*See, e.g.*, doc. 161 at 3 ("The record, examined without the distortion of an unopposed motion, paints a very different picture."); *id.* at 4 ("The Government's allegations concerning . . . Crites' 'sub-marketers' likewise lack context the unopposed record did not provide.")).  But Crites is only railing against himself, as he admits that he is the reason the Court was forced to rule on an unopposed record. (*See id.* at 5 ("These facts, never before the Court because no response was filed, are fundamental to every element the Government was required to prove.")).  Rule 56 is eminently clear as to the cost of failing to oppose a well-supported motion for summary judgment. *See* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion . . . ."); FED. R. CIV. P. 56(e) ("If a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . .").

According to Crites, his "procedural history" (that is, failure to timely respond) "reflects a lay defendant doing his best to navigate complex federal litigation without legal training." (Doc. 161 at 5).  But gross carelessness and ignorance of the law are no excuse for the failure to comply with the Court's clearly articulated deadlines.  Although courts

"give liberal construction" to documents filed by pro se plaintiffs, *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), they are still "required . . . to conform to procedural rules," *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002); *see Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1234 n.10 (11th Cir. 2014) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981))); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a pro se . . . litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." (emphasis omitted)).

**B.      Rule 60(b)**

Crites also argues in the alternative that he is entitled to relief under Rule 60(b)(1), claiming that his "reasonable but mistaken belief that ongoing settlement negotiations would substitute for a formal response to a pending dispositive motion is precisely the kind of 'mistake' or 'excusable neglect' that Rule 60(b)(1) contemplates." (Doc. 161 at 29).[4]

He is not.  Crites has not shown excusable neglect sufficient under Rule 60(b)(1) because the relevant circumstances do not indicate his negligence was "excusable" in any

---

[4] Crites also cursorily argues that he is entitled to relief under Rule 60(b)(6). (Doc. 161 at 29).  Even if his argument for this extraordinary relief was properly supported—which it is not—Rule 60(b)(6) only "covers grounds not already covered by [Rule 60(b)(1)–(5)]." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025); *see Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986) (noting that Rules "60(b)(1) and (b)(6) are mutually exclusive," and "[t]herefore, a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)").  Even if these independent barriers did not defeat this claim, it would still fail as a matter of law because Crites was not faultless and could have taken steps to avoid the judgment. *See Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) ("To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." (citations omitted)); *see also* 12 JAMES MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 60.48[3][b] (3d ed. 2024) ("In a vast majority of the cases finding that extraordinary circumstances do exist . . . , the movant is completely without fault . . . almost unable to have taken any steps that would have resulted in preventing the judgment from which relief is sought.").

9

sense.  Four factors are relevant to the excusable neglect inquiry: "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1355 (11th Cir. 2009) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).  The most important factors are the first two, "the absence of prejudice [to the non-moving party] and the interests of efficient judicial administration." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 744 (11th Cir. 2017).

Here, there would be prejudice to the Government in reopening a judgment in a case that has been open for three years where it specifically moved for and obtained summary judgment against a single party over the course of almost a year.  It would also unnecessarily hamper the Court's interests in its ability to efficiently resolve the cases before it.  After twice ordering Crites to respond to the Government's motion against him, the Court exhaustively reviewed the record evidence the Government had amassed against him, reviewed the relevant law, cross-checked the Government's request for damages, and ultimately entered judgment against Crites.  The only end to be served by lifting the judgment against Crites would be to reward a party who voluntarily chose to sit on his hands.

Crites' neglect in filing a response was entirely within his control, and the Court sees no indication that Crites acted in good faith in failing to respond even after the Court extended his response deadline, (doc. 151), continued deadlines "*pending resolution of the*

*motion for summary judgment*," (doc. 153 (emphasis added)), and the Government filed a notice of new authority related to FCA penalties, (doc. 154).  In sum, the equities wholly indicate that Crites' neglect was inexcusable.

Nor does Crites sufficiently demonstrate "mistake" because the only "mistake" he cites for such relief is his own, which resulted from a lack of diligence. (*See* doc. 161 at 29 ("[Crites'] reasonable but mistaken belief that ongoing settlement negotiations would substitute for a formal response . . . is precisely the kind of 'mistake' . . . that Rule 60(b)(1) contemplates.")).  However, for the reasons noted above, Crites' belief was unreasonable and he apparently made no attempts to verify his beliefs in the almost year the motion was pending.  And further, "nothing in Rule 60(b) suggests that a [party's] own mistake would warrant relief from an adverse judgment." *Clements v. Governor of Fla.*, 2024 WL 1882172, at *1 (11th Cir. 2024) (per curiam).

## IV.  CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED that Crites' motion to alter or amend the judgment, (doc. 161), is DENIED.

This case remains closed.

DONE this 22nd day of June, 2026.

_/s/ Emily C. Marks_____
EMILY C. MARKS
UNITED STATES DISTRICT JUDGE
